## THE BALTIMORE CEMETERY COMPANY *vs.* THOS. COBURN.

By a written contract for the building of a·gateway to a·cemetery according to a specified plan, it was " mutually agreed, that should any alteration be contemplated from the present design it may be done, provided the parties beforehand agree upon the price and endorse it upon the contract, and unless such agreement be so entered, it is to be taken to be an agreement to make the alteration without any change in price of the original contract." HELD:

1st. That the builder could not recover for erecting two windows in·the gateway not contemplated in the original plan, it being an *alteration,* and the agreement and price therefor not being *endorsed upon the contract,* and there being no evidence of a promise by the owners to pay for the same.

2nd. The architect appointed to superintend the work according to the plan, with such alterations as the parties might agree upon, had no power to bind the owners by promising in their name to pay for this alteration.

APPEAL from the Court of Common Pleas for Baltimore city.·

*Assumpsit* by the appellee against the appellants, to recover compensation for building two windows in a gateway, which the plaintiff, by a written contract under seal, had agreed to build for the defendants. The declaration contained a count for work and labor, and materials furnished, and the common money counts. Plea, *non assumpsit.*

*Exception.* The plaintiff proved by the architect, employed

by the defendants to superintend the erection of the gateway at the entrance to their cemetery, that the plaintiff built it after a certain plan under his superintendence, and under a written contract which the witness had not read; that he had built two windows in the gateway not contemplated in the plan, but which, in the opinion of the witness, were necessary to symmetry and good appearance, in consequence of the change of the location of two chimneys therein by the direction of the defendants, which made room for the windows; that plaintiff refused to build these windows unless he was paid extra for them, or a price in addition to that stipulated in the contract; that witness considered himself authorised to make changes rendered necessary by the chimneys, without consulting the defendants upon the details and without special directions from them, and in the exercise of this power he directed the plaintiff to build the windows, and told him if he would do so, he, (the witness,) would see him paid, whatever they should, in his judgment, be worth, and he thought them worth $150; and that witness passed the work when finished as complete.

The defendants then produced the written contract, signed and sealed by the plaintiff and defendants, under which the gateway was built, and which provided for the completion of the same, in every particular, at a stipulated price, and contained the clause stated in the opinion of this court; and proved by cross-examination of the plaintiff's witness, that he did not believe the defendants knew of the erection of these windows, or of his agreement to pay for them, until the gateway was finished, when they objected to pay for them because they knew nothing of the alteration, and that it had never been mentioned to them or endorsed upon the contract. There was also evidence as to the character of the work upon the gateway, and that other alterations were made tending to benefit the plaintiff, which need not be stated.

The defendants then asked three instructions to the jury, the first two of which were granted and need not be stated; the *third* was in substance, that if the jury find the execution

of the written contract in evidence, and that the work and labor done, and materials furnished, for which the plaintiff seeks to recover in this case, were done and furnished in executing said contract, either in carrying out the original design or any alteration thereof, the plaintiff cannot recover.

The plaintiff then asked two instructions:—1st. That if they find his claim is based upon a contract for separate or additional work, requested or required by the defendants, and that he objected to such work unless some additional sum should be allowed him therefor, and that this was agreed to on the part of the defendants or their agent, then he is entitled to recover such additional sum as the jury shall find to have been agreed upon for such additional services; and shall also find that such extra work was not endorsed on the written contract, through neglect or inadvertence, or other causes not fraudulent upon the part of either party.

2nd. Though the jury may find that alterations were made in the original plan by which the plaintiff was benefited, the defendants cannot set off for such benefit in this case against the plaintiff's claim, if they shall find that such alterations were made at the instance and request of the defendants.

The court, (MARSHALL, J.,) granted the plaintiff's prayers, and the first two of the defendants, but rejected their third. To the granting of the plaintiff's prayers, and the refusal to grant their third prayer, the defendants excepted, and the verdict and judgment being against them, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*William S. Bryan* for the appellants, argued, that the judgment should be reversed:

1st. Because there was no evidence that the appellant assented to the construction of any work as additional to that contracted for by the sealed instrument, or that it agreed to pay an additional sum for the same; or that the architect was authorised to bind it by a bargain in this matter; or that any

thing was done by the appellant calculated to induce the appellee to believe that the architect was so authorised; and because the sealed instrument furnished uncontradicted evidence negativing all these assumptions.

2nd. Because there was no evidence of an intention to endorse upon the sealed instrument an agreement to pay for additional work, and of a failure to execute this intention through "neglect, inadvertence, or other causes, not fraudulent upon the part of either party."

3rd. Because there was proof of a valid agreement under seal, recognised by the parties as subsisting, and acted upon by them throughout the whole of this transaction, which provided for "the entire completion of the gateway in every particular" for a certain compensation set forth in said agreement, subject to be varied only in the manner therein provided, and containing only certain special exceptions, not referring to the windows mentioned in the evidence, and the plaintiff is bound thereby and cannot recover upon a *quantum meruit.* 3 *Taunt.*, 52, *Ellis vs. Hamlen.* 9 *Barr.*, 245, *Miller vs. McCaffrey.*

4th. Because if any excuse had been shown, wherefore an agreement to pay for additional work was not endorsed upon the sealed instrument; yet, nevertheless, the action should still have been brought upon the contract under seal, and the special matter of excuse set forth in proper averments. 4 *Cranch*, 239, *Young vs. Preston.* 12 *East*, 179, *Randall vs. Lynch.*

5th. We further insist, that in this case no *procedendo* ought to be awarded, because, upon the evidence contained in the bill of exceptions, the appellee cannot recover on a subsequent trial.

*Coleman Yellott* for the appellee, argued:

1st. Although there was a written contract under seal for the building of the gateway, according to a specified plan, yet if that plan was varied from, and extra work done by the plaintiff and accepted by the defendants, the plaintiff may

recover for such extra work on the common counts in *assumpsit.* The defendants' third prayer was therefore properly rejected, and the plaintiff's first prayer properly granted. 5 *G. & J.,* 263, *Watchman & Bratt, vs. Crook.* 4 *Cowen,* 564, *Jewell vs. Schroeppel. Platt on Covenants,* 554. 1 *East,* 619, *Heard vs. Wadham.* 9 *Gill,* 288, *Rodemer vs. Gonder, et al.* 1 *Do.,* 342, *Howard vs. Wilmington & Sus. R. R. Co.* 44 *Law Lib.,* 24, 30. 7 *Pick.,* 184, *Hayward vs. Leonard.*

2nd. The omission, through "neglect or inadvertence," to endorse upon the sealed contract the terms of the special parol agreement in reference to the erection of the extra windows, as made by the defendants' agent with the plaintiff, which extra windows were made necessary by the *defendants*' change of the original plan, is no bar to the present action of *assumpsit* upon the parol agreement. 9 *Gill,* 288. 9 *Pick.,* 298, *Munroe vs. Perkins.* 21 *Pick.,* 417, *Mill-Dam Foundery vs. Hovey.*

TUCK, J., delivered the opinion of this court.

The parties entered into a written agreement for the erection, by the appellee for the appellant, of a gateway, according to a specified plan. The contract contained this clause: "It is hereby mutually agreed that should any alteration be contemplated from the present design, it may be done, provided the parties beforehand agree upon the price, and endorse it upon the contract, and unless such agreement be also entered, it is to be taken to be an agreement to make the alteration without any change in price of the original contract." Some changes were made in the progress of the work, about which there is no controversy. The appellee sues to recover compensation for two windows, placed in the gateway by direction of the architect, which it is said became necessary to its symmetry and beauty, in consequence of the two chimneys having been placed in a position different from that contemplated by the original plan.

It is said, on the part of the appellee, that these windows were additional work, not part of the original design, and, therefore, not such an alteration as was necessary to be

endorsed on the contract.  In this we do not agree.   Why should the change of place of the chimneys be within the agreement, and not the change as to the windows?   It makes no difference whether the number of the windows was increased or not.   In one sense these two new windows would be additional work, but might they not require an alteration in the plan?   If the original design had been completed according to the contract, and other work done after the contract had been discharged, it would present a different question.

This is not like the cases cited, in which the parties charged acquiesced in, or accepted the work when finished.   It does not appear that the company ever acquiesced in this change.  Indeed if the order had been given by it for the work, would it not have been within the clause we have given from the contract?  It is impossible to conceive the use for inserting any such provision, if it is to have no effect in a case like the present.   Owners are very much in the power of builders and architects.   Changes, apparently unimportant, are often made, the first knowledge of which comes to the owner in the shape of an additional charge for extra work.   It may have been to prevent this, and the controversy that often arises from verbal arrangements suppletory to written agreements, that the parties had this cautious provision inserted.   It was a clause for the benefit of both, especially for that of the owner.   The plaintiff must have known that he could not make the alteration and charge for it, unless the assent of the parties was endorsed on the contract.   The stipulation provides, not only that the price shall be agreed upon beforehand, and endorsed, but also, that if this is not done, it shall be taken as an agreement to make the alteration without any change in the price from the original contract.   If the plaintiff, relying on the assurance of the architect, chose to perform this work without placing it within the protection afforded to the parties by an endorsement on the contract, he must bear the consequences.

There is nothing to show the assent of the defendants, or

their acquiescence in the alteration; on the contrary, the first we hear of them in reference to it, is their refusal to pay the extra charge. Even if they had had knowledge tending to show their assent, it might have been inferred by them, that, as no agreement had been made and endorsed, the contractor was changing the places of the windows, only in conformity with the alteration of the design as to the chimneys, and that no additional charge would be made.

The case of *Miller vs. McCaffrey*, 9 *Barr.*, 245, furnishes some very wholesome suggestions on this subject. There the written contract provided how alterations were to be made, and stipulated that "no extras should be allowed under any pretext whatever." The contractor claimed compensation for extra work which he had done without the previous agreement of the other parties, but, of which they had knowledge during its progress, and made no objection. The court held, that in the absence of an express promise to pay they were not liable. It must be so, else there is no sense in making a contract. When one of the parties reposes on his written agreement, and is willing to abide by its requirements, shall the other make alterations to suit his own taste, or that of the superintendent, and compel the owner to pay an extra price for what, probably, if consulted, he never would have allowed. There is no evidence of a promise to pay for this work. On the contrary, the witness states that he did not believe the company knew of the erection of the windows, nor of his (witness') agreement to pay for them, until the gateway was finished and the bill for the windows rendered, when the company objected to pay for them, on the ground that they knew nothing of the alteration, and that it had never been mentioned to them, nor endorsed upon the contract. There is no foundation in law, nor warrant in reason, for saying, that in a case like the present, where a party stipulates that he will not pay for alterations in the work unless they are agreed upon, and reduced to writing beforehand, he shall nevertheless be held responsible upon a *quantum meruit*. It would be to deny to him the benefit of written evidence, and subject him

to the uncertainties of parol proof, depending on the fluctuating opinions of other persons as to the character and the value of the work, and to bind him against his will.

We do not say that a stipulation of this kind may not be waived in such manner as to render the party liable for extra work; but in the present case we do not discover any thing on the part of the appellants, or of any person authorized to act for them, to exclude them from the benefit of this clause in the contract. The witness was appointed merely to superintend the work according to the plan, with such alterations as the parties might have agreed upon. As such superintendent, he had no power to bind the company by promises in their name, whatever he may have thought of the extent of his authority. Indeed the inference from his testimony is, that the plaintiff looked to him and not to the company, for he no where says, that he promised that the defendants would pay for the work, but that he would see the plaintiff paid what the windows were worth, which he thought was $150.

From the view we have taken of the obligations of the parties under the contract, we are of opinion that the court erred in granting the plaintiff's *first* prayer, and that the judgment must be reversed. As a *procedendo* will not issue, it is unnecessary to express any opinion on the court's refusal to grant the defendants' *third* prayer.

*Judgment reversed, and no procedendo.*